THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| BOBBIE JOE SHARP, JR.,<br><br>Petitioner,<br><br>v.<br><br>ROBERT POWELL,<br><br>Respondent. | **MEMORANDUM DECISION & ORDER DISMISSING HABEAS PETITION**<br><br>Case No. 2:22-CV-378-DAK<br><br>District Judge Dale A. Kimball |

In this federal habeas corpus case, *pro se* inmate Bobbie Joe Sharp, Jr., ("Petitioner")[1] challenges his state conviction following a guilty plea in 2018. 28 U.S.C.S. § 2254 (2023) ("[A] district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."). Respondent has moved to dismiss the claim with prejudice under Federal Rule of Civil Procedure 12(b)(6). Having carefully considered the Petition and exhibits, (ECF No. 1); the Respondent's first motion to dismiss and exhibits, (ECF No. 8); Petitioner's response to Respondent's first motion to dismiss (ECF No. 9); Respondent's second motion to dismiss and exhibits (ECF No. 11); and, Petitioner's response to Respondent's second motion to dismiss, (ECF No. 12), the Court concludes that Petitioner has procedurally defaulted all issues. Respondent's motion to dismiss with prejudice is therefore granted.

[1]Because Petitioner is *pro se*, his pleadings must be construed liberally. *Garrett v. Selby, Connor, Maddux, & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). However, this requirement does not obligate the Court to form arguments for him or excuse compliance with procedural rules. *Id*.

## I. BACKGROUND

In November 2018, Petitioner plead guilty to aggravated sexual abuse of a child. The Utah Court of Appeals provided the following summary of the charges:

> In January 2018, the State charged [Petitioner] with two counts of rape of a child, three counts of sodomy on a child, one count of aggravated sexual abuse of a child, and one count of enticing a minor. As declared in the State's probable cause statement, Victim's grandmother reported that [Petitioner] had given Victim, an eleven-year-old girl, a cell phone around Thanksgiving 2017 and that [Petitioner] had been sending Victim sexually explicit messages.

*State v. Sharp*, 2021 UT App. 90, ¶ 2, 498 P.3d 9 (ECF No. 8-6, at 1-3.)

> At the preliminary hearing, the State introduced the DVD of Victim's interview at the Children's Justice Center, evidence that [Petitioner] lived in Victim's apartment complex, and evidence that [Petitioner] met Victim when he gave ice pops to her and the other children in the complex. Victim's mother testified that in the autumn of 2017, Victim spent time daily in [Petitioner]'s apartment and [Petitioner] would walk her home in the evening. The State also introduced evidence that [Petitioner] sent messages to Victim about "butt things" and told Victim that he "would stretch her butt out." After the preliminary hearing, the district court bound [Petitioner] over for trial.

*Id*. at ¶ 3. Following the preliminary hearing, the parties engaged in plea negotiations. *Id*. at 4. Petitioner eventually pleaded guilty to a single count of aggravated sexual abuse of a child. *Id.* Petitioner agreed to the following factual basis for the plea:

> On or about June 1, 2017, through December 21, 2017, in Salt Lake County, [Petitioner,] under circumstances not amounting to rape of a child, object rape of a child, sodomy upon a child, or an attempt to commit any of these offenses, touched the buttocks of a child, [Victim], with the intent to arouse the sexual desire of any person and [Petitioner] was in a position of special authority that allowed him to exercise undue influence over [Victim].

*Id*. at ¶ 28.

> In his statement in support of his guilty plea, [Petitioner] acknowledged that he "underst[ood] that by pleading guilty [he would] be admitting that [he] committed the crime[ ]" of aggravated sexual abuse of a child. He also "stipulate[d] and agree[d]" to a factual description of his conduct for which he was criminally liable. [Petitioner]'s statement also showed that [Petitioner] "agree[d] to be sentenced to a term of 15 year[s] to life in prison."

*Id*. at ¶ 5. At the change of plea hearing, counsel for Petitioner acknowledged the factual basis including the age of the victim and the specific the nature of Petitioner's special relationship with the child. *Id*. at ¶ 6.

> The court conducted the requisite plea colloquy with [Petitioner]. [Petitioner] confirmed to the court that what his attorney described did in fact happen and that he was pleading guilty because he was guilty. [Petitioner] also stated, among other things, that he understood the rights that he was giving up by pleading guilty. The court accepted [Petitioner]'s guilty plea, finding that the plea was "knowing and voluntary," that [Petitioner] had the "advantage of very good counsel," and that he was "competent to enter a plea" and "underst[ood] the rights [he was] giving up by doing so." The court told [Petitioner], "If you want to ask to withdraw this plea, you'll need to do so in writing to me sometime before your sentencing."

*Id*. at ¶ 7.

Weeks later, Petitioner attempted to withdraw his plea. *Id.* at ¶ 8. "At the hearing on the motion to withdraw the guilty plea, [Petitioner]'s counsel began by informing the court that [an exculpatory] letter, written to [Petitioner], recently 'was intercepted at the jail' and was 'purportedly from the victim.'" *Id.* at ¶ 9. Petitioner had an electronic copy of the letter but not the original, which was being investigated as a possible forgery. *Id*. Petitioner did not provide a copy of the letter to the Court at the hearing on the motion to withdraw the plea. *Id*. The court proceeded with the motion to withdraw the plea while "implying that the investigation could continue and 'then we can figure out where that letter came from.'" *Id*. Six weeks later, at the sentencing hearing the

court began by asking whether counsel had reviewed the presentence investigation report. *Id.* at 11.

> Counsel responded, "[W]e cannot go forward," and explained that [Petitioner]'s case "seems to be reassigned in [her] office"; that [Petitioner] had written to the Utah State Bar complaining about counsel, the prosecutor, and the judge; and that counsel did not "feel like [she could] represent him." The court indicated that the bar complaint would not "do that" and asked for any other reason to delay. Counsel responded that the police were "investigating the source" of the letter purportedly from Victim and stated, "I think that investigation needs to be completed before we can go forward with sentencing." The court disagreed. After learning that Victim and her mother were present at the hearing, the court decided to proceed with sentencing. The court again asked if [Petitioner] and his counsel had reviewed the PSI, and when counsel said she had not, the court told counsel that it would take a recess to allow for that review before sentencing. Counsel again protested that she could not represent [Petitioner] and that the case was being reassigned. The court responded, "Well, I think you can represent him. The fact that he filed a bar complaint, to me—I mean, he filed one against me. He filed one against the prosecutor. I don't think that has any bearing on this."
>
> When proceedings resumed after the recess, counsel indicated that she had reviewed the PSI with [Petitioner] and that it contained no factual inaccuracies. Counsel reiterated that she did not think that they could proceed, citing the fact that the court did not have the alleged recantation letter. The court acknowledged that it did not have the letter but it had "the implication to what the letter is, though." Counsel responded that the "letter, item by item, is exculpatory in every event that was alleged in this case." The court then queried, "And how does that affect ... him knowing the plea?" Counsel answered, "[T]hat's being investigated by [the police]." Unsatisfied with that answer, the court tried again, asking "how that letter has anything to do with a person giving a knowing, voluntary, and intentional plea." Counsel responded, "Well, Your Honor, it's completely exculpatory, and that is being investigated by [the police]." The court then "accept[ed]" [Petitioner]'s objection, noting that [Petitioner] had made his record.
>
> Counsel then read [Petitioner]'s bar complaint aloud in court. Although the court acknowledged that counsel had said she could not "represent [Petitioner] effectively in the sentencing," the court nevertheless asked counsel to "[g]o ahead," and she then presented argument pertaining to sentencing:
>
> > [Petitioner] did take responsibility for what

> happened here. He did plead guilty. He agreed that he would go to prison, 15 to life. That is not an easy thing to do. And other than that, I don't know what to tell you. He's accepted responsibility at the time of [the plea]. However, now he's saying he's innocent ... and there's evidence to support that.
>
> The court stated, "I don't agree with the last part," and then invited the prosecutor to argue.

*State v. Sharp*, 2021 UT App. 90 at ¶¶2-13, 498 P.3d 9 (ECF No. 8-6, at 1-3.) The court sentenced Petitioner to an indeterminate sentence of fifteen to life.

Petitioner appealed his guilty plea. Petitioner asserted three issues to the Utah Court of Appeals in his direct appeal: (1) "Whether the district court abused its discretion when it denied [Petitioner]'s motion to withdraw his guilty plea"; (2) "Whether the district court abused its discretion when it forced [Petitioner] to go forward with sentencing"; and (3) Whether the district court imposed an illegal sentence when it denied [Petitioner] his right to allocution." (ECF no. 11-4, at 6.) Petitioner's fifty-page brief, prepared by counsel, raised no federal claims and cites no federal law. Nor did the Court of Appeals address any issues of federal law in its decision. *See generally State v Sharp,* 2021 UT App 90 (ECF No. 8-6). The Utah Supreme Court denied Petitioner's petition for certiorari on December 8, 2021. Petitioner's last day to petition the United Supreme Court was March 8, 2022. *See* Sup. Ct. R. 13.

Petitioner had until March 8, 2023 to file a state petition for post-conviction relief under the Utah Post Conviction Remedies Act ("PCRA") *See* U.C.A. 78B-9-107. Petitioner did not file a state petition for post-conviction relief.

On June 3, 2022, Petitioner filed his federal Petition. Petitioner attached a copy of the alleged recantation letter as an exhibit to the Petition. The hand-written letter allegedly from the victim claims that she and a friend used Petitioner's phone to send sexually explicit text messages to victim in retaliation for Petitioner's refusal to give her a ride to the mall and for "telling on me

for the lighers [sic]." (ECF No. 1-2, at 44) The letter further alleges that the victim and her friend had snuck into Petitioner's house and had sex on Petitioner's bed. *Id*. The letter concludes "Please forgive me, cause if you go to Prison then i will kill my self cause it wasn't you it was [my friend] and me so Please Forgive me. Your Friend [Victim]" *Id.* (errors in original).

On February 16, 2023, Respondent moved to dismiss the Petition without prejudice to allow Petitioner to exhaust his federal claims in state court. (ECF No. 8, at 4) ("[Petitioner]'s federal habeas petition should be dismissed without prejudice because his claims are unexhausted and [Petitioner] still has time to file a State postconviction petition raising these claims in State court to exhaust them. Thus, [Petitioner]'s habeas petition is premature.")

## II. PETITIONER'S ASSERTED GROUNDS FOR FEDERAL-HABEAS RELIEF

Petitioner asserts five grounds for relief in his Petition: (1) The conviction relied on evidence obtained by an unreasonable search and seizure in violation of the 4th Amendment (ECF No. 1, at 5); (2) Petitioner was denied due process under the 5th Amendment when his cell phone was seized without a warrant (*id*. at 7); (3) The trial court denied Petitioner's right to trial by a jury under the 6th amendment when by denying Petitioner's motion to withdraw his plea (*id*. at 8); (4) Petitioner's appointed counsel failed to provide adequate representation in violation of the 6th Amendment (*id*.); and (5) The trial court denied Petitioner's rights to due process and equal protection under the 14th Amendment by denying Petitioner's motion to withdraw his plea (*id*. at 10.)

Petitioner's *pro se* pleadings are entitled to liberal construction. *See, Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, (1976)); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[I]f the court can reasonably read the

pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.") However, liberal construction cannot cure failure to support conclusory allegations. *See Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992). ("Nevertheless, the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations.")

**III. PROCEDURAL DEFAULT**

The United States Supreme Court has declared that when a petitioner has "'failed to exhaust his state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred' the claims are considered exhausted and procedurally defaulted for purposes of federal habeas relief." *Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). Absent "exceptional circumstances," the Utah Supreme Court will decline to consider issues which have not been "presented to the district court in such a way that the court has an opportunity to rule on [it]." *Patterson v. Patterson*, 2011 UT 68, ¶ 12.

Utah's Post-Conviction Remedies Act states in relevant part:

> A person is not eligible for relief under this chapter upon any ground that:
> (a) may still be raised on direct appeal or by a post-trial motion;
> (b) was raised or addressed at trial or on appeal;
> (c) could have been but was not raised at trial or on appeal;
> (d) was raised or addressed in any previous request for post-conviction relief or could have been, but was not, raised in a previous request for post-conviction relief; or
> (e) is barred by the limitation period established in Section 78B-9-107.

Utah Code Ann. § 78B-9-106(1) (2023).

None of Petitioner's federal claims are exhausted. Petitioner's direct appeal asserted only issues of state law. Petitioner's fifty page brief, prepared by counsel, raised no federal claims and cites no federal law. Nor did the Court of Appeals address any issues of federal law in its decision. *See generally State v Sharp,* 2021 UT App 90. Petitioner did not file a state petition for post-conviction relief and would now be time-barred from filing such a claim. The Utah Supreme Court denied Petitioner's petition for certiorari on December 8, 2021. Petitioner's last day to petition the United Supreme Court was March 8, 2022. Petitioner had until March 8, 2023 to file a state petition for post-conviction relief under the Utah Post Conviction Remedies Act ("PCRA") *See* Utah Code Ann. §78B-9-107(1) (2023).

Petitioner filed his federal Petition on June 3, 2022, long before the expiration of his statute of limitations in state court. On February 16, 2023, Respondent moved to dismiss the Petition without prejudice to allow Petitioner to exhaust his federal claims in state court. (ECF No. 8, at 4) ("[Petitioner]'s federal habeas petition should be dismissed without prejudice because his claims are unexhausted and [Petitioner] still has time to file a State postconviction petition raising these claims in State court to exhaust them. Thus, [Petitioner]'s habeas petition is premature.")

However, Petitioner declined the opportunity to return to the state courts to exhaust his federal claims. Petitioner's response to Respondent's first motion to dismiss was a three-sentence letter addressed to the clerk of court:

> I'm writing this letter to let you know that I heard from the Utah attorney general today, asking for a motion for a dismissal of my habeas corpus claim stating that I didn't file for a PCRA. Well I did some research before I file my habeas corpus, and since my case was

> a direct appeal and it was denied I wasn't require to file a PCRA.
> Thank you for your time.

(ECF No. 9, at 1 (all errors in original).)

Respondent filed a motion to dismiss with prejudice on April 4, 2023, approximately one month after Petitioner's statute of limitations to file a petition in the state courts under the PCRA. (ECF No. 11) Petitioner's only response to the second motion to dismiss was to resubmit his three-sentence letter to the clerk of court. (ECF No. 12.)

Petitioner is mistaken that his federal claims were exhausted through his direct appeal. Petitioner's direct appeal contained no federal issues. None of Petitioner's claims have been fairly presented to the state's highest court and Petitioner would now be procedurally barred from presenting his claims in Utah courts. Petitioner's claims are therefore procedurally defaulted. *See Thomas v. Gibson*, 218 F.3d 1213, 1221.

## IV. EXCEPTION TO PROCEDURUAL DEFAULT

Procedural default may be avoided if a petitioner can demonstrate either cause and prejudice or a fundamental miscarriage of justice. *Thomas*, 218 F.3d at 1221 ("This court may not consider issues raised in a habeas petition 'that have been defaulted in state court on an independent and adequate procedural ground[] unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice.'") (quoting *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998) (alteration in original)).

### A. Cause and Prejudice

A petitioner may be able to overcome procedural default if he can establish "cause" to excuse the procedural default and demonstrate that he suffered "actual prejudice" from the alleged error. *Davila v. Davis*, 582 U.S. 521, 524 (2017). "[T]o satisfy the 'cause' standard, a petitioner must show that 'some objective factor external to the defense' impeded his compliance

with Utah's procedural rules." *Dulin v. Cook*, 957 F.2d 758, 760 (10th Cir. 1992) (citations omitted). Where the alleged cause and prejudice is ineffective assistance of counsel, the petitioner must satisfy both prongs of *Strickland*'s familiar two-pronged standard: (1) deficient performance by counsel, measured by a standard of "reasonableness under prevailing professional norms;" and, (2) prejudice to the defense caused by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The Supreme Court has made clear that attorney performance is strongly presumed to have been adequate. *Strickland,* 466 U.S. at 690. "Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed." *Davila v. Davis,* 582 U.S. 521, 533 (2017). A strategic decision to forgo a claim on appeal is only deficient performance if the claim was plainly stronger than those actually presented to the appellate court. *Id*. Meanwhile, to demonstrate prejudice, "[t]he habeas petitioner must show not merely that … errors … created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage." *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (emphasis in original) (alteration in original) (quoting *United States v. Frady*, 456 U.S. 152 (1982)). The petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694.

Petitioner offers no argument that his procedural default should be excused. This court will not assume the role of advocate to construct arguments on Petitioner's behalf. *See Northington v. Jackson*, 973 F.2d at 1521. In his Petition, Petitioner argues that his counsel provided ineffective assistance, which is one potential basis to establish cause and prejudice to excuse procedural default. But, Petitioner does not argue, let alone establish, that his procedural default should be excused for ineffective assistance of counsel. Petitioner's counsel elected to

focus on issues of state law on direct appeal. Petitioner has not shown that any of his federal claims are plainly stronger than the issues that his counsel thoroughly briefed on direct appeal. Furthermore, his counsel presumably knew that Petitioner would have the opportunity to exhaust any federal claims through the PCRA process. Finally, Petitioner had no right to counsel after his direct appeal and declined to avail himself of the opportunity to present his federal claims to the Utah Supreme Court. Therefore, Petitioner has no basis to argue that his procedural default should be excused for ineffective assistance of counsel. (ECF No. 8, at 9, 11.) Nor does Petitioner offer any other cause or prejudice to excuse his procedural default.

**B. Miscarriage of Justice**

A petitioner may also overcome the procedural bar if he can show that his conviction resulted in a "fundamental miscarriage of justice." *See Thomas*, 218 F.3d at 1221 (alteration omitted) (citation omitted). A fundamental miscarriage of justice may be proven by actual innocence where a petitioner can show that "in light of new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 569 U.S. 383, 386-87 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). To be plausible, an actual-innocence claim must be grounded on solid evidence not adduced at trial. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citing *Schlup,* at 324). The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence" presented in his habeas petition. *Id*. Because such evidence is so rare, "in virtually every case, the allegation of actual innocence has been summarily rejected. " *Id.* (citation omitted). "In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." *Bousley v. United States*, 523 U.S. 614, 624 (1998).

Petitioner fails to establish his actual innocence. Petitioner failed to offer a meaningful response to either of Respondent's motions to dismiss. This court will not assume the role of advocate to construct arguments on Petitioner's behalf. *See Northington v. Jackson*, 973 F.2d at 1521. However, in his Petition, Petitioner maintains that a letter purportedly written by the victim establishes his actual innocence. Even if Petitioner had argued that the allegedly exculpatory letter establishes a miscarriage of justice to excuse his procedural default, his argument would fall short. Petitioner pleaded guilty, meaning there was no trial and no full presentation of evidence. Petitioner stated for the record that the events described in the factual basis actually happened and that he pleaded guilty because he was actually guilty. Petitioner has since argued that his plea was not knowing and voluntary because of the allegedly exculpatory letter which was discovered after the plea, but before sentencing. However, there remain serious questions about the letter's authenticity. As the Utah Court of Appeals observed:

> Indeed, most of the information before the court suggested that Victim's allegations were credible and that she had not completely recanted. For instance, the court watched Victim's interview in which she described [Petitioner]'s abuse, and it found Victim to be "intelligent, articulate and credible." It further noted that her answers were "internally consistent and included plausible details" about anatomy and clothing. Victim was able to describe matters that are normally outside the knowledge of an eleven-year-old, and Victim's statements were corroborated by [Petitioner]'s sexually explicit messages that he sent to her. This evidence lent credibility to Victim's allegations.
>
> On the other hand, the evidence that Victim had completely recanted was comparatively weak. For example, the letter was intercepted at the jail, but it was unknown what the letter looked like and how a child would have known how to properly address and send a letter to [Petitioner] in jail. A complete recantation on Victim's part was also inconsistent with her and her mother's presence and conduct at the sentencing hearing. Additionally, the letter surfaced in the context of [Petitioner] having "buyer's remorse" over his plea and lodging a bar complaint as a "little trick" to delay the proceedings. This context suggested that the letter could well be yet another ploy.

*State v. Sharp*, 2021 UT App 90, ¶¶36-37.

A letter of unknown origin is not the type of solid evidence necessary to establish that no reasonable juror would have convicted Petitioner. The Court of Appeals described the evidence that the victim had recanted "comparatively weak" and noted that the letter was inconsistent with the victim's conduct at the sentencing hearing. *Id*. The uncertainty about the letter's authenticity undermines its value as "solid evidence" of Petitioner's actual innocence. Had there been a trial, a reasonable juror could have considered the evidence against Petitioner and concluded that the letter was a forgery. Even if the letter were proven to be authentic, a reasonable juror might have found the evidence against Petitioner, including the victim's interview with the Children's Justice Center more credible than the letter and concluded that the victim had falsely recanted to protect her "friend." Therefore, Petitioner has failed to adduce solid evidence demonstrating his actual innocence. Petitioner has not shown that a miscarriage of justice would result unless his procedural default is excused.

## V. CONCLUSION

All of Petitioner's claims are procedurally defaulted. Petitioner has failed to establish that the procedural default should be excused. It is therefore **ORDERED** that the motion to dismiss is **GRANTED.** The Petition for habeas corpus is **DENIED** and the action is **DISMISSED WITH PREJUDICE**. It is also **ORDERED** that a certificate of appealability is **DENIED**. This action is **CLOSED**.

DATED this 28th of August, 2023.

BY THE COURT

JUDGE DALE A. KIMBALL
United States District Court